UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

LEON GREATHOUSE,

                           **Plaintiff,**

              -against-

FREDDIE VASQUEZ, et al.,

                          **Defendants.**

------------------------------------------------------------------X

20-CV-8748 (PAE)(SN)

**REPORT AND
RECOMMENDATION**

**SARAH NETBURN, United States Magistrate Judge.**

**TO THE HONORABLE PAUL A. ENGELMAYER:**

      Leon Greathouse, proceeding as a plaintiff *pro se*, asserts claims of false arrest and malicious prosecution arising out of an allegedly unlawful arrest and arraignment for second-degree murder that took place in June 2000. ECF No. 2 (Compl.) ¶¶ 11-13. He sues NYPD Detective Freddie Vasquez, District Attorney Cyrus Vance in his official capacity, and the City of New York.

      Defendants Vasquez, Vance, and the City of New York (collectively "Defendants") jointly move to dismiss Greathouse's complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that: (1) Greathouse's claims for false arrest and municipal liability against Vasquez and the City of New York are time-barred; (2) even if Greathouse's claim against the City of New York is timely, he fails to state a claim for municipal liability; (3) Greathouse cannot show that the criminal proceeding terminated in a manner that affirmatively indicates his innocence, and therefore cannot state a malicious prosecution claim against Vasquez; and (4) Greathouse's malicious prosecution claim against Vance fails for lack of

personal involvement and due to Eleventh Amendment and prosecutorial immunity. See ECF

Nos. 27, 32.

I recommend that the Court grant Defendants' motion to dismiss Greathouse's false arrest

claim against Vasquez, malicious prosecution claim against Vance, and municipal liability claim

against the City of New York, and deny the motion to dismiss Greathouse's malicious

prosecution claim against Vasquez.

## BACKGROUND

On or about June 2, 2000, a warrant was issued for Greathouse's arrest for murder in the

second degree. Compl. ¶ 11. Greathouse presented himself to the police on June 12, 2000, and

Vasquez interviewed and arrested him. Id. ¶¶ 12, 34-35. Greathouse claims that, during that

interview, Vasquez said that he did not believe Greathouse had committed the murder in

question, but that he had to arrest Greathouse because the charge was so serious and because

Greathouse was shown on the "wanted" poster associated with the murder. Id. ¶ 35; but see ECF

No. 34 (Pl. Opp.) Ex. C (state court document containing Vasquez's sworn statement that a

"person known to the District Attorney's Office" had informed him that Greathouse shot another

person and caused their death).

Greathouse was arraigned soon after, and by June 16, 2000, he was released on his own

recognizance. Compl. ¶¶ 13-14. The charge remained pending for the next 17 years, despite

Greathouse being summoned to court multiple times. Id. ¶¶ 19-20, 23-25. During that time, he

was convicted in two unrelated criminal cases. In 2002, he was sentenced to three years in

prison, and in 2008 to another seven years. Id. ¶¶ 17, 22. During his first sentence, Greathouse

was removed from the Lakeview Shock Incarceration Correctional Facility[1] because the program received a memorandum on the pending murder charge and his refusal to agree to a proffer (also known as a "queen for a day" offer). Id. ¶ 18. During his second sentence, Greathouse appeared before the parole board three times, was questioned about the murder charge on at least two occasions, and was denied parole twice; the third time, the parole board's report noted the outstanding warrant and charge. Id. ¶¶ 26-27. In April 2017, Greathouse sought and received legal assistance from the Legal Aid Society, which filed an order to show cause in criminal court, presumably related either to his parole denial or to the pending murder charge. Id. ¶ 28. On October 19, 2017, over 17 years after Greathouse was arrested for second-degree murder, the murder charge was dismissed without explanation. Id. ¶ 31; Pl. Opp. Ex. A (state court certificate of disposition). This case was filed three years later. (The complaint was received by the Court on October 19, 2020, but it was signed by Greathouse on October 13, 2020.)

## DISCUSSION

### I.   Standard of Review

To survive a 12(b)(6) motion to dismiss, the complaint "must allege sufficient facts . . . to state a plausible claim for relief." Johnson v. Priceline.com, Inc., 711 F.3d 271, 275 (2d Cir. 2013) (citing Bell Atl. Corp v. Twombly, 550 U.S. 544, 555-56 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S.

---

[1] The New York State Department of Corrections and Community Supervision administers a Shock Incarceration Program to provide "a highly structured routine of discipline, intensive regimentation, exercise, and work therapy, together with substance abuse treatment, education, pre-release counseling, and life skills counseling." N.Y. State Dep't of Corr. & Cmty. Supervision, Directive 86 (Jul. 29, 2021), https://doccs.ny.gov/system/files/documents/2021/08/0086_0.pdf.

662, 678 (2009). "The Court "accept[s] as true all factual statements alleged in the complaint and draw[s] all reasonable inferences in favor of the non-moving party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). But the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678. The complaint must raise factual allegations "enough to raise a right to relief above the speculative level." Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008) (quoting Twombly, 550 U.S. at 555).

The "submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (cleaned up); see Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011). The Court, however, examines a *pro se* plaintiff's complaint "for factual allegations sufficient to meet the plausibility requirement." Hill, 657 F.3d at 122; see Twombly, 550 U.S. at 570 (a complaint must allege "enough facts to state a claim for relief that is plausible on its face"). Courts "are obligated to draw the most favorable inferences that [a *pro se*] complaint supports," but "cannot invent factual allegations that [the plaintiff] has not pled." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010). The Court will not assume the truth of mere legal conclusions or conclusory statements. See Iqbal, 556 U.S. at 678-79.

Because a motion to dismiss "challenges the complaint as presented by the plaintiff," the Court may ordinarily review "only a narrow universe" of materials in assessing whether the motion should be granted. Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016). Courts may consider the complaint itself, as well as documents incorporated by reference or appended. Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991). "[I]n ruling on a 12(b) motion to dismiss," courts are also "permitted to consider matters of which judicial notice may be taken." Simmons v. Trans Express Inc., 16 F.4th 357, 360 (2d Cir. 2021) (internal quotation omitted).

State court filings and prior rulings are public records and subject to judicial notice. See Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004); Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc., 969 F.2d 1384, 1388 (2d Cir. 1992) ("A court may take judicial notice of a document filed in another court . . . to establish the fact of such litigation and related filings.") (internal quotation omitted).

## II.   Timeliness of False Arrest and Municipal Liability Claims

Claims brought under 42 U.S.C. § 1983 that accrued in New York have a statute of limitations of three years. See Jaghory v. N.Y. State Dep't of Educ., 131 F.3d 326, 331 (2d Cir. 1997); Owens v. Okure, 488 U.S. 235, 250-51 (1989). Section 1983 claims accrue when the plaintiff "knows or has reason to know of the injury which is the basis for the action." Singleton v. City of New York, 632 F.2d 185, 191 (2d Cir. 1980). A false arrest claim accrues at the time of detention. Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir. 2006).

Greathouse was arrested and arraigned on or around June 12, 2000, and any false arrest claim accrued at that time. He commenced this action over 17 years after the three-year statute of limitations had run. Greathouse's false arrest claim is therefore time-barred. Similarly, his municipal liability claim is predicated on the City's alleged failure to "properly train and/or supervise its New York City police officers regarding the officers['] knowingly, but falsely, swearing to, and filing false and misleading[] and unsupported criminal charges," Compl. at 9— that is, it depends on the same arrest at the core of his false arrest claim. Greathouse's arrest occurred 20 years before he sued, and his municipal liability claim is therefore time-barred as well. Accordingly, I recommend that Greathouse's false arrest claims against Vasquez and the City should be dismissed as time-barred.

### III.      Pleading Requirement for the Municipal Liability Claim

Even assuming the timeliness of Greathouse's municipal liability claim against the City of New York, he must still establish that "the violation of his constitutional rights resulted from a municipal custom or policy." Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 122 (2d Cir. 1991). The City of New York "cannot be held liable [under § 1983] *solely* because it employs a tortfeasor—or, in other words, [it] cannot be held liable . . . on a *respondeat superior* theory." Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691 (1978) (emphasis in original).

Greathouse may establish municipal liability by alleging: (1) the existence of a formal policy officially promulgated or adopted by the City of New York, Monell, 436 U.S. at 690; (2) a "single challenged act" that was the decision of a municipal policymaker, Walker v. City of New York, 974 F.2d 293, 296 (2d Cir. 1992) (quoting Pembaur v. Cincinnati, 475 U.S. 469, 480 (1986)); (3) unconstitutional practices by city employees "so manifest as to imply the constructive acquiescence of senior policy-making officials," Sorlucco v. N.Y.C. Police Dep't, 971 F.2d 864, 871 (2d Cir. 1992) (citing City of St. Louis v. Praprotnik, 485 U.S. 112, 130 (1988)); or (4) the City's "failure to train or supervise" its employees in a manner that evidences "deliberate indifference to the rights of [the City's] inhabitants." Jenkins v. City of New York, 478 F.3d 76, 94 (2d Cir. 2007) (quoting City of Canton v. Harris, 489 U.S. 378, 389 (1989)).

Greathouse's complaint does not identify any formal policy, specific act by a municipal policymaker, manifest unconstitutional practices by city employees, or defined municipal failure to train or supervise. Greathouse asserts in one paragraph that the City of New York violated his Fourth Amendment rights by failing properly to train and supervise its police officers, who allegedly swore to and filed false criminal charges, even though the City "knew that its failure to

6

properly train and properly supervise[] would violate the rights" of people like himself. Compl. at 9. Beyond this sentence, Greathouse's complaint focuses almost solely on his arrest by Vasquez, a police detective not alleged to be a policymaker. But "a single incident alleged in a complaint" that "involved only actors below the policy-making level[] does not suffice to show a municipal policy." Ricciuti, 941 F.2d at 123 (citation omitted); see Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993) (holding same), overruled on other grounds by Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit, 507 U.S. 163, 164 (1993). Therefore, if the Court disagrees with my conclusion that Greathouse's municipal liability claim against the City of New York should be dismissed as untimely, I recommend that it be dismissed for failing to state a claim.

## IV.    Malicious Prosecution Claim Against Vasquez

To establish a malicious prosecution claim under § 1983, a plaintiff "must plead both a violation of his rights under the Fourth Amendment and the elements of a malicious prosecution claim under state law." Dettelis v. Sharbaugh, 919 F.3d 161, 163 (2d Cir. 2019) (internal quotation omitted); see Lanning v. City of Glens Falls, 908 F.3d 19, 24 (2d Cir. 2018) (same). Under New York law, a malicious prosecution claim requires: "(1) the initiation or continuation of a criminal proceeding against [the] plaintiff; (2) termination of the proceeding in [the] plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for the defendant's actions." Dettelis, 919 F.3d at 163-64 (quoting Murphy v. Lynn, 118 F.3d 938, 947 (2d Cir. 1997)).

Defendants' only challenge to Greathouse's malicious prosecution claim against Vasquez is that Greathouse has not adequately pleaded that the criminal prosecution was dismissed in a manner indicating his innocence, which they base exclusively on Lanning v. City of Glens Falls.

There, the Court of Appeals held that the criminal proceeding underlying a plaintiff's malicious prosecution claim must have been terminated in a manner "indicative of" the plaintiff's innocence. 908 F.3d at 25. "When a person has been arrested and indicted, absent an affirmative indication that the person is innocent of the offense charged, the government's failure to proceed does not necessarily 'imply a lack of reasonable grounds for the prosecution.'" Id. at 28 (quoting Conway v. Village of Mount Kisco, 750 F.2d 205, 215 (2d Cir. 1984)) (cleaned up).

The Lanning decision apparently created some confusion among the district courts, specifically as to whether a dismissal on speedy trial grounds qualified as a favorable termination for purposes of a malicious prosecution claim under § 1983. See Kee v. City of New York, 12 F.4th 150, 163 (2d Cir. 2021) (citing cases). To address the lower court inconsistencies, the Court of Appeals held that a "speedy trial dismissal is generally a favorable termination for purposes of a malicious prosecution claim under Section 1983." Id. at 165. Where "there is no evidence in the record to support a non-merits-based reason for the dismissal," it is error to conclude that the plaintiff has "failed to satisfy this element on his federal malicious prosecution claim." Id. at 166.

As a pro se litigant, Greathouse's submissions must be construed liberally. Triestman, 470 F.3d at 474. "This policy . . . is driven by the understanding that 'implicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training.'" Id. at 475 (quoting Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983)) (cleaned up).

In New York, speedy trial motions must be granted if more than six months have passed since "the commencement of a criminal action wherein a defendant is accused of . . . a felony," N.Y. Crim. Proc. Law § 30.30(1)(a), such as second-degree murder, N.Y. Penal Law § 125.25.

The record before the Court on the dismissal of the charge against Greathouse is, at best, ambiguous: the murder charge remained pending for *over 17 years*, well past the six months required for a speedy trial dismissal, and there is no evidence that the District Attorney's office meaningfully pursued trial during that period. The certificate of disposition does not explain the rationale for the dismissal. Pl. Opp. Ex. A. That the case was dismissed after the Legal Aid Society filed an order to show cause, Compl. ¶ 28, further supports a finding either that there was insufficient cause for the prosecution or that the case was dismissed because it violated Greathouse's right to a speedy trial. There is no allegation in the complaint to suggest that the dismissal was for "non-merits-based" reasons. Given the inconclusive record and Greathouse's *pro se* status, I find that Greathouse has adequately alleged a favorable termination of the proceeding underlying his malicious prosecution claim. I therefore recommend that the Court deny Defendants' motion to dismiss Greathouse's malicious prosecution claim against Vasquez.

## V.     Malicious Prosecution Claim Against Vance

Finally, Defendants move to dismiss Greathouse's malicious prosecution claim against Vance, who served as the New York County District Attorney when the complaint was filed, on the grounds that (1) there is no evidence of Vance's personal involvement in Greathouse's prosecution, and (2) Vance is immune from suit whether he is sued in his official or personal capacity.

### A.     Personal Involvement

When suing a government official under § 1983, "a plaintiff must plead that each [such] defendant, through the official's own individual actions, has violated the Constitution." <u>Tangreti v. Bachmann</u>, 983 F.3d 609, 616 (2d Cir. 2020) (quoting <u>Iqbal</u>, 556 U.S. at 676). A supervisor's "mere knowledge" of a subordinate's unconstitutional behavior is insufficient. <u>Id.</u> "The violation

must be established against the supervisory official directly." Id. at 618. It is unclear whether Greathouse alleges Vance's involvement in his capacity as a supervisor of assistant district attorneys or whether Greathouse asserts that Vance personally "continued a felony prosecution . . . that he knew was false." Compl. at 8-9. Either way, Greathouse must plead that Vance directly caused the malicious prosecution.

Defendants argue that there is no way Vance could have played a role in initiating the prosecution because he was elected as New York County District Attorney a decade *after* Greathouse's arrest. That may be, but the first element of a malicious prosecution claim is "the initiation *or continuation*" of a criminal proceeding against the plaintiff. Dettelis, 919 F.3d at 163 (emphasis added). The murder charge remained pending for seven years after Vance was elected as District Attorney. During that time, Vance was properly positioned to decide whether to continue to prosecute Greathouse. See Pl. Opp. Ex. G (2012 court transcript ordering warrant for Greathouse's arrest for failure to appear, which identifies Vance as District Attorney). Again, the record is ambiguous as to Vance's personal involvement in continuing the ultimately dismissed criminal proceeding against Greathouse. Given Greathouse's *pro se* status, I construe his filings liberally and find that he has adequately alleged Vance's personal involvement to survive a motion to dismiss. Greathouse's malicious prosecution claim against Vance should not be dismissed on the grounds that he failed to allege Vance's personal involvement.

### B.      Eleventh Amendment and Prosecutorial Immunity

"When prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the county," and is therefore entitled to invoke Eleventh Amendment immunity. Ying Jing Gan v. City of New York, 996 F.2d 522, 535-36 (2d Cir. 1993) (citation omitted). Additionally, "prosecutors performing prosecutorial activities that

are 'intimately associated with the judicial phase of the criminal process' are entitled to absolute immunity from an action for damages under § 1983." Id., 996 F.2d at 530 (quoting Imbler v. Pachtman, 424 U.S. 409, 430 (1976)). "For an official who has absolute immunity, this immunity extends to all acts 'closely associated with the conduct of litigation.'" Williams v. Savory, 87 F. Supp. 3d 437, 455 (S.D.N.Y. 2015) (quoting Barrett v. United States, 798 F.2d 565, 571-72 (2d Cir. 1986)). District attorneys, however, serve "more than one role in discharging the duties of the prosecutorial office," and "whether a district attorney is or is not entitled to absolute immunity for his or her conduct depends on the function being performed at that time." Hill v. City of New York, 45 F.3d 653, 656 (2d Cir. 1995); see Corley v. Wittner, 811 F. App'x 62, 63 (2d Cir. 2020) (prosecutorial immunity as to speedy trial, fair trial, obstruction of justice claims); see also Pinaud v. Cty. of Suffolk, 52 F.3d 1139, 1148 (2d Cir. 1995) (conspiracy among prosecutors shielded by immunity); Montero v. Travis, 171 F.3d 757, 761 (2d Cir. 1999) (officials deciding whether to grant parole entitled to absolute immunity).

Greathouse's claim against Vance is based on Vance's involvement in the prosecution and proffer, Compl. at 8-9, which are quintessentially prosecutorial activities. Vance is therefore entitled to both Eleventh Amendment immunity and absolute prosecutorial immunity as related to any participation in the prosecution and proffer. Similarly, Vance is entitled to immunity as related to any alleged conspiracy with the parole board to deny Greathouse parole. See Pl. Opp. at 3-4. Thus, regardless of whether Greathouse has adequately alleged Vance's personal involvement in his prosecution, the Court should grant Defendants' motion to dismiss Greathouse's malicious prosecution claim against Vance on the grounds that he is immune from suit.

**VI.     Leave to Amend**

To the extent that Greathouse's opposition to Defendants' motion to dismiss includes new causes of action, see ECF No. 34 (Pl. Opp.) at 2-4, he "cannot amend [his] complaint by asserting new facts or theories for the first time in opposition to Defendants' motion to dismiss." K.D. v. White Plains Sch. Dist., 921 F. Supp. 2d 197, 209 n.8 (S.D.N.Y. 2013) (citing cases). Construing those portions of the opposition as a motion for leave to amend the complaint, the Court may deny the motion if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his [proposed new] claim which would entitle him to relief." Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991). Greathouse asserts additional constitutional violations of the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments and suggests that Defendant Vance conspired with the parole board to deny him parole but offers insufficient proof for either of these new claims. Any allegations of a "speedy trial" violation are indivisible from Greathouse's malicious prosecution claim. Allegations of conspiracy by Vance must be dismissed due to Vance's prosecutorial immunity. Greathouse provides no facts to support his asserted due process violation. If the Court construes Greathouse's opposition as a motion for leave to amend his complaint, I recommend that the motion be denied.

## CONCLUSION

Greathouse's false arrest and municipal liability claims are untimely, and he fails to state a municipal liability claim. The malicious prosecution claim against Vance is barred by Eleventh Amendment and prosecutorial immunity. Greathouse, however, states a plausible malicious prosecution claim again Vasquez sufficient to satisfy Rule 12(b)(6). Accordingly, I recommend that the Court grant in part the Defendants' motion, dismiss Greathouse's false arrest claim

against Vasquez, and dismiss the case as to the City of New York and Vance. Greathouse's malicious prosecution claim against Vasquez should proceed.

The Clerk of Court is respectfully requested to mail a copy of this Report and Recommendation to the pro se Plaintiff.

_____
SARAH NETBURN
United States Magistrate Judge

DATED:        December 20, 2021
              New York, New York

\*                \*                \*

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS
## REPORT AND RECOMMENDATION

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Paul A. Engelmayer at the United States Courthouse, 40 Foley Square, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Engelmayer. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).